UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY G. TUFFILLARO, | ) | CASE NO. 5:16-cv-0878 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| CHESAPEAKE ENERGY | ) | |
| CORPORATION, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court are cross-motions for summary judgment (Doc. No. 41 ["Kayden Mot."]; Doc. No. 43/44 ["Chesapeake Mot."]) on the cross-claim filed by defendants/cross-claimants Chesapeake Energy Corporation and Chesapeake Exploration, LLC (collectively, "Chesapeake"). Both motions are fully briefed and ripe for determination.

The sole legal issue at this juncture is whether Kayden Industries (USA), Inc. ("Kayden") is required to defend and indemnify Chesapeake under the terms of an agreement between them. The Court originally agreed to the parties' joint request to bifurcate the issues of indemnification and liability and to address dispositive motions on this legal issue. (*See* Joint Report of Parties Planning Meeting, Doc. No. 20 ¶ 3.)

Having now reviewed the cross-motions in light of the pleadings and briefing, the Court concludes that such request was improvidently granted because there are material factual disputes underlying the legal issue.[1] Therefore, for the reasons set forth briefly herein, both motions are **denied without prejudice**.

---

[1] Despite urging the Court to resolve the indemnification issue on early dispositive motions because it is a purely legal question, both sides take a different stance in their respective briefing. In its opposition to Kayden's motion, Chesapeake references its inability to "develop a factual record to rebut" Kayden's "untimely disclosure of the factual

# I. BACKGROUND

On April 13, 2016, plaintiff Anthony G. Tuffillaro ("Tuffillaro") filed a two-count personal injury complaint against Chesapeake, Kayden, and Nomac Drilling, LLC ("Nomac"). Tuffillaro alleges that, on March 16, 2015, he "was working as a shale and gas well technician for Defendant, Kayden[]" when, "while working within the course and scope of his employment, [he] sustained [bodily injuries]." He alleges that all three defendants "controlled the work site where [he] was injured[.]"(Doc. No. 1, Complaint ["Compl."] ¶¶ 8, 9, 10.) Tuffillaro further alleges both that Chesapeake and Nomac "negligently and/or willfully an/or wantonly and/or recklessly required [him] to inappropriately use a pressure washer to clean out solid build-up inside a dangerous area of the mathena shale/gas separator set up[,]" *and* that he was "performing such serious and dangerous activity as instructed by his employer, Defendant Kayden." (*Id.* ¶¶ 12, 19.) He further alleges that, "[a]t all times herein relevant, Defendant Kayden was directing the course and scope of [his] activities[,]" and "instructed and/or required [him] to work in these substantially dangerous and hazardous conditions." (*Id.* ¶¶ 20, 23.)

Chesapeake filed its answer, along with a two-count cross-claim against Kayden, alleging breach of the Master Service Agreement ("MSA") between them. Noting that Tuffillaro alleged in his complaint that he was "'working within the course and scope of his employment' with Kayden" (Doc. No. 12, Answer/Cross-Claim ["Cross-cl."] ¶ 13, citing Compl. ¶¶ 8-10), Chesapeake alleges that, "[p]rior to the filing of [Tuffillaro's] Complaint . . . Chesapeake corresponded with Kayden and demanded that Kayden defend and indemnify both Chesapeake and Nomac pursuant to the

---

and legal components of [its] case[.]" (Doc. No. 46 at 522-23.) In its reply brief, Kayden similarly argues that both motions "depend[] upon the facts of the underlying case with Mr. Tuffillaro[,]" but that underlying case "was stayed pending the resolution of the dispute over the indemnity clause." (Doc. No. 47 at 569.)

indemnification provision contained in the MSA[, but] Kayden has refused to defend and indemnify Chesapeake and its invitee, Nomac." (*Id.* ¶¶ 14, 15.) Chesapeake further alleges that indemnification by Kayden is warranted because Tuffillaro's complaint alleges that Chesapeake's "negligence caused his injuries[,]" while he "was acting in the course and scope of his employment with Kayden[] . . . performing services for Kayden[.]" (*Id.* ¶¶ 17-19.)

Following discovery on this issue, the parties filed cross-motions for summary judgment on Chesapeake's cross-claim against Kayden, asserting that the question of indemnification of Chesapeake (and Nomac) by Kayden under the MSA is purely a question of law for the Court.

## II. DISCUSSION

The MSA contains the following relevant indemnity provision:

> 6.2 Contractor agrees to protect, defend, indemnify and hold harmless Company, its officers, directors, employees or their invitees, and any working interest owner or non-operator for whom Company is obligated to perform services, from and against all claims, demands, and causes of action of every kind and character without limit and without regard to the cause or causes thereof or the negligence or fault (active or passive) of any party or parties including the sole, joint or concurrent negligence of Company, any theory of strict liability and defect of premises, or the unseaworthiness of any vessel (whether or not preexisting the date of this Contract), arising in connection herewith in favor of Contractor's employees, Contractor's contractors or their employees, or Contractor's invitees on account of bodily injury, death or damage to property.

(MSA at 380.)[2]

Chesapeake, in reliance on this provision, takes the position that "[t]he contract between Chesapeake and Kayden requires Kayden to defend and indemnify Chesapeake and its invitees against bodily injury claims brought by Kayden employees[,]" (Chesapeake Mot. at 472, 480), such as the instant bodily injury claim brought by Tuffillaro against Chesapeake and Nomac.

---

[2] A copy of the MSA is attached to Kayden's motion. (Doc. No. 41-1.)

3

But Kayden points to MSA ¶ 4.0 that prohibits any Chesapeake employee from "giv[ing] instructions to the employees . . . of [Kayden,]" all of whom are "at all times . . . under the direct and sole supervision and control of [Kayden]." Kayden takes the position that a Chesapeake employee wrongly ordered Tuffillaro to perform the dangerous work that injured him. Kayden therefore argues in its motion that "[t]here are no provisions in the indemnity section of the MSA that contemplate indemnifying Chesapeake for the reckless, willful or wanton conduct of Chesapeake[,]" nor are there "provisions that contemplate indemnifying Chesapeake if Chesapeake was in control of a Kayden employee." (Kayden Mot. at 355.) It argues that the indemnification requirement in MSA ¶ 6.2, when read in conjunction with MSA ¶ 4.0, is unenforceable because it fails to express the intent to exculpate in unequivocally clear language, as required under Oklahoma law.[3] *See Otis Elevator Co. v. Midland Red Oak Realty, Inc.*, 483 F.3d 1095, 1101 (10th Cir. 2007) ("An agreement indemnifying one from its own negligence will be strictly construed and must meet three conditions: '(1) the parties must express their intent to exculpate in unequivocally clear language; (2) the agreement must result from an arm's-length transaction between parties of equal bargaining power; and (3) the exculpation must not violate public policy.'") (quoting *United States v. Hardage*, 985 F.2d 1427, 1434 (10th Cir.1993) (further citation omitted)).

Chesapeake replies, in part, that "there have been no findings that establish the cause of Tuffillaro's alleged injuries[.]" (Doc. No. 48 at 574.)

Notwithstanding whether the injuries were caused by the "sole, joint, or concurrent" act of Chesapeake, and whether the conduct of any of the defendants was "negligent[] and/or willful[]

---

[3] It is indisputed that the MSA is governed by Oklahoma law. (MSA ¶ 9.3.)

4

and/or wanton[] and/or reckless[,]" it appears, at first blush, that the language of the indemnification provision is sufficiently broad and "unequivocally clear" to be enforceable under Oklahoma law. But the Court concludes that, due to the factual disputes regarding the underlying complaint brought by Tuffillaro, it is not possible at this juncture to construe the terms of the MSA, including the indemnification provision. Additionally, the parties' briefing did not fully address the issues in a way that would assist the Court in applying the appropriate analysis.

### III. CONCLUSION

For the reasons set forth herein, the cross-motions for summary judgment are both denied without prejudice.

**IT IS SO ORDERED**.

Dated: March 27, 2018

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**